# IN THE COURT OF APPEALS OF IOWA

No. 16-1928
Filed March 8, 2017

**IN THE INTEREST OF K.S.,**
**Minor child,**

**J.S., Father,**
        Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Susan C. Cox, District Associate Judge.


        The father appeals from the order terminating his parental rights to his child, pursuant to Iowa Code section 232.116(1)(h) (2016).  **AFFIRMED.**


        Magdalena B. Reese of Cooper, Goedicke, Reimer, & Reese, P.C., West Des Moines, for appellant father.

        Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

        Congarry D. Williams of State Public Defender Office, Des Moines, guardian ad litem for minor child.


        Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

The father appeals from the order terminating his parental rights to his child, K.S., born in October 2015. The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h) (2016). We affirm.

**I. Background Facts Proceedings.**

Meggen, the mother,[1] was pregnant with K.S. when she was paroled to the House of Mercy, a transitional housing facility, on October 5, 2015. K.S. was born shortly thereafter. The mother absconded from her parole at the House of Mercy and hid from law enforcement with K.S. at the residence of Justin, the father, in Greenfield, Iowa. The Iowa Department of Human Services (DHS) became involved immediately, an arrest warrant was issued for the mother, and on December 9, 2015, pick up and removal orders for K.S. were entered by the court, citing the father's drug use and criminal history as well as the mother's. On December 18, 2015, the court confirmed removal based on the mother and father's criminal activity and history of substance abuse.[2] The father was summoned and appeared in court for the removal hearing. The court provided him with written notice that the continuation of removal could result in the termination of his parental rights. K.S. was placed with the maternal grandmother, where K.S. has remained during the proceedings. On January 25, 2016, the court adjudicated K.S. a child in need of assistance.

Both parents have an extensive history of mental-health issues, substance abuse, and criminal activity. DHS offered an array of services to

---

[1] The mother's rights were also terminated. She is not a party to this appeal.
[2] The mother and father were co-offenders in a 2015 theft incident.

achieve reunification, including child protective services (CPS) assessments, ongoing case management services, substance-abuse evaluation and treatment, drug testing, and family safety, risk, and permanency (FSRP) services. Initially, the father had some success with the services. In late December 2015, the FSRP worker noted positive interactions between the father and K.S. at supervised visitations. Despite a few cancellations due to weather and illness, the father was visiting K.S. regularly. In January 2016, however, the father relapsed and tested positive for amphetamines and methamphetamine. Shortly after, his utility company shut off his gas, and he failed to meet the FSRP worker within fifteen minutes of the visitation time, which required the worker to cancel a visit. DHS decided to move the visits from Greenfield to Des Moines because the father failed to meet the FSRP worker at a previous visit and the travel time disrupted the child's sleeping schedule. At DHS's recommendation, the father successfully completed inpatient substance-abuse treatment on March 4, 2016, and he began outpatient treatment on April 28, 2016.

Despite the progress during visitations and a round of inpatient substance abuse treatment, the father relapsed multiple times on amphetamines and methamphetamine. On May 16, 2016, he tested positive for methamphetamine. In July 2016, the father was unsuccessfully discharged from his outpatient treatment facility for a lack of attendance. During testimony at the termination trial on September 1, 2016, the father admitted to using methamphetamine multiple times over the summer. He also stated he had not seen K.S. in a couple of months because he was using illegal substances; he admitted to using methamphetamine seven days before the termination trial.

Only three days before trial, the father entered an intensive inpatient care facility in California. He testified at the termination trial by telephone. His counselor testified that he was progressing by not oversleeping and by attending all of his meetings. However, there was not a complete diagnosis and the length of his treatment was uncertain. On October 30, 2016, the court issued an order terminating the father's parental rights. The father appealed the termination order.

We entered an order for further briefing on the issue of whether K.S. was "removed from the physical custody" of the father in light of the Iowa Supreme Court's order interpreting the "removal" aspect of Iowa Code section 232.116 (1)(h)(3). *See In re C.F.-H.*, 889 N.W.2d 201, 203–08 (Iowa 2016). The Supreme Court's ruling was filed after the juvenile court's order terminating the father's rights. The father and the State filed an additional brief.

**II. Standard of Review.**

We conduct a de novo review of proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.* We give weight to the factual determinations of the juvenile court, particularly regarding the credibility of witnesses, although we are not bound by them. *Id.* The primary consideration of our review is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III. Discussion.**

    **A. Statutory Grounds.**

We review termination orders using the following three-step analysis:

> The first step is to determine whether any ground for termination under section 232.116(1) has been established. If we find that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights. Finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider whether any [permissive factors] in section 232.116(3) apply to preclude termination of parental rights.

*In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016) (citations omitted).

    The father claims the court erred in finding his parental rights should be terminated under Iowa Code section 232.116(1)(h). The relevant portion of the code permits the court to terminate parental rights if it finds all of the following:

>     (1) The child is three years of age or younger.
>     (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
>     (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
>     (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h)(1)–(4).

    It is undisputed the first two elements are met. The child was under the age of three and was adjudicated a child in need of assistance pursuant to Iowa Code section 232.96. The third element—whether the child was "removed" from the physical custody of the father—was the subject of additional briefing.

*1. The "Removal" Requirement.* The State argues the child was removed from the father's physical custody because the child was living with the father, although briefly, when removal took place. The State further argues the juvenile court determined in a formal hearing that it was not in the best interest of the child to remain in the physical custody of the father, citing mental health and drug issues. The father argues the removal requirement was not met because the juvenile court did not find the father had physical custody of the child.

The Iowa Supreme Court recently interpreted the "removal" requirement listed in Iowa Code section 232.116(1)(h)(3). *See C.F.-H.*, 889 N.W.2d at 203–08. In *C.F.-H*, the parties were never married but they resided together with their minor child. *Id.* at 202, 208 (Mansfield, J., Dissenting). DHS became involved with the family in 2011 after an incident of domestic violence between the mother and the father. *Id.* at 202. DHS made a founded child abuse assessment against the father, the parties engaged in voluntary services, and the case was closed in June 2012. *Id.* The child was not removed from the home during the initial DHS involvement. *Id.*

In August 2012, DHS made another founded child abuse assessment against both parents. *Id.* C.F.-H was adjudicated a child in need of assistance in November 2012, temporary physical custody of the child was placed with the mother, and the father left the family home pursuant to the DHS safety plan. *Id.* at 202, 208 (Mansfield, J., dissenting). The father was still allowed visitation. *Id.* at 208 (Mansfield, J., dissenting). Following the father's continuing refusal of services, his parental rights were terminated in 2016. *Id.* at 202. The father never resided with C.F.-H from the time of the father's move from the home to

the termination trial. *Id.* at 210 (Mansfield, J., Dissenting). The majority held the child was never "removed" from the father pursuant to section 232.116(h)(1) because his lack of physical custody is insufficient to satisfy the statutory removal requirements. *Id.* at 207. The court declined to address "whether a removal of the child from one parent is sufficient to support termination of parental rights of a noncustodial parent." *Id.* at 207 n.2.

The dissent asserts under the facts of the case, the child was removed because he lived with the father prior to DHS's recommendation that physical custody be placed with the mother. *Id.* at 212 (Mansfield, J., dissenting). In response, the majority states, "Although the dissent makes a plausible argument around the issue of whether C.F.-H. was, in fact, actually removed from physical care, any contention that C.F.-H. had been so removed from physical custody has not been preserved." *Id.* at 208. The majority explains the State conceded the child has always remained in the custody of the mother, and has never been in the father's physical custody. *Id.*

The facts of this case are distinguishable from *C.F.-H*, and the "removal" requirement of Iowa Code section 232.116(1)(h)(3) was satisfied. First, the State does not concede the child "has always been 'removed' from the physical custody of the father," as it did in *C.F.-H. See id.* In fact, the record indicates that the mother and child were living with the father after she absconded from parole. Unlike the circumstances in *C.F.-H*, the juvenile court relied on the actual removal of the child, rather than a "mere lack of physical custody." *Id.* at 208 (holding "removal from physical custody" is not established when the father never maintained physical custody of the child).

Second, the juvenile court held a formal removal hearing involving the father, unlike the court in *C.F.-H*. *Id.* at 205 ("[T]he State conceded there was no such removal order against the father."). The summons and removal hearing provided the father notice and an opportunity to be heard on the issue. Following the hearing, the juvenile court determined out-of-home placement was in the child's best interest. Because a formal removal hearing involving the father took place and the district court relied on an actual change of physical custody from the father, the statutory removal requirements were met.[3]

There is also clear and convincing evidence the fourth element was satisfied. K.S. could not be returned to the parent's custody at the time of the termination hearing. The father entered a residential treatment program in California three days before the hearing. He testified that he did not know when he would return or how long the treatment would last. Additionally, he admitted to using methamphetamine seven days before the trial. The father suffers from severe mental-health and dependency issues. We agree with the district court that the statutory grounds for termination have been met under section 232.116(1)(h).

**2. *Six-Month Extension.*** The father next claims the court improperly denied his request for a six-month extension to work toward reunification. The juvenile court may grant an extension if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-

---

[3] The timing elements of Iowa Code section 232.116(1)(h) were also met. At the time of the termination hearing, K.S. was approximately ten months old. On or around December 18, 2015, the court removed the child, who was placed with the maternal grandmother, and the termination trial took place on September 1, 2016. No trial period of reunification took place between the removal and termination hearing.

month period." Iowa Code § 232.104(2)(b). The juvenile court concluded, "The father has been in a treatment program, for three days. There is no indication either parent is even beginning to deal with their co-dependency and/or parenting deficits." The father entered the intensive treatment program on or around August 29, 2016. While a counselor at the treatment facility did testify that the father was progressing,[4] it was still very early in his treatment plan. The father had not received a complete diagnosis and the length of his treatment was uncertain.

Additionally, the father's history in treatment does not support a finding that the need for removal will no longer exist at the end of a six-month extension. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" (citation omitted)). Although the father was successfully discharged from inpatient substance-abuse treatment in March 2016, he failed to complete the recommended outpatient treatment and relapsed multiple times. For example, in January 2016, approximately one month after the child's removal, the father tested positive for methamphetamine and amphetamine. In May 2016, the father again tested positive[5] for methamphetamine less than one month after he started relapse prevention treatment, and at trial, he admitted to using methamphetamine multiple times

---

[4] A representative from the treatment facility testified that the father has attended every class.

[5] The father submitted to sweat-patch testing in May 2016. He testified the results were a false positive triggered by his contact with another person who was using methamphetamine.

between June 2016 and the trial date. While we commend the father's efforts to continue treatment, last-minute efforts in this case are insufficient to demonstrate a need for reunification. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Time is a critical element. A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). At some point, the court's patience with the father must succumb to the child's well-being. *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997). Based on the above, we cannot conclude the need for termination will cease to exist at the end of a six-month extension.

**3. *Reasonable Efforts.*** The father next claims the State failed to make reasonable efforts to reunify the family by requiring the father to attend visits in Des Moines rather than Greenfield. He argues DHS should have provided greater assistance with transportation, or DHS changed the location due to an erroneous belief the father was not participating. "Visitation between a parent and child is an important ingredient to the goal of reunification." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). However, the child's best interests control the nature and extent of visitation. *Id.* DHS scheduled supervised visits in Greenfield and Des Moines within one month of removal. The father attended multiple visits and appeared to be bonding with the child. On January 29, 2016, the supervised visits were moved to Des Moines after the father cancelled one confirmed visit, according to FSRP reports. The father continued to attend visits in Des Moines, although some visitations were cancelled due to the father's inability to travel from Greenfield to Des Moines. Based on the record, we disagree the visits were cancelled due to the father's lack of participation. FSRP

moved the visits to Des Moines because the father failed to show up for one confirmed visit after the FSRP worker drove the child from Des Moines to Greenfield.[6] DHS also noted the child's sleep patterns were disrupted by the travel to Greenfield.

While DHS could have demonstrated more flexibility in this situation, especially since the father was in communication with the worker before the scheduled visitation, we cannot conclude DHS failed to make reasonable efforts to reunite the family. The issue upon termination was not the father's ability to spend time or bond with K.S. In fact, the majority of FSRP reports confirmed a positive relationship with K.S. Instead, the father's illegal substance addiction posed a threat to the child's wellbeing. Even assuming the visits remained in Greenfield, there is no indication from the record that the father's substance-abuse issues were subsiding. He used methamphetamine seven days before the termination trial and failed to visit K.S. over a two-month period because of his illegal drug use. The State offered the father multiple opportunities to attend substance-abuse and mental-health treatment, including substance-abuse evaluations, substance-abuse treatment, drug testing, in-patient treatment, outpatient treatment, and therapy. The father's severe substance abuse and his failure to participate fully in treatment during the length of the proceedings led to the termination of his parental rights, not transportation issues for visitations.

---

[6] According to the FSRP reports, the January 29, 2016, visitation was scheduled for 10:00 am at the Greenfield library. Upon arrival, the FSRP worker noted the father was absent and had the following communication with the father via text message:

WORKER: "I'm waiting in my car" (10:03 am); FATHER: "Gimme one min." (10:12 am).

WORKER: If you aren't here by 10:15 I will be leaving."; FATHER: "k." (10:13).

At 10:16 the worker left. At 10:57 the father replied, "that was pretty rude I was [at the library] at 1015 and [saw] you leave…when is my next visit."

**B. Best Interests.**

The father next argues that termination is not in the best interest of the child, in part, because of the strong bond he developed with K.S. Even when the above statutory grounds are satisfied, the juvenile court must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

There is little evidence that retaining the father's parental rights is in the best interest of K.S. Despite the positive interactions between the father and K.S. during visitations, the parent-child bond was weakened by the father's substance abuse and his failure to visit consistently. The father missed visitations with the child while he was using methamphetamine, and he has failed to complete multiple treatment programs

It is also difficult to tell from the record whether the father can provide a stable home for K.S. At the time of the termination trial, he was in California undergoing intensive inpatient treatment and his release date was uncertain. While he testified that he has a job lined up with a previous employer upon his return from treatment, he is currently unemployed. It is unclear when the father will be returning, where he will be living, and the extent of his employment. K.S. has resided with the maternal grandmother throughout the entirety of this case. Permanency and stability are essential elements to K.S.'s best interests. *See J.E.*, 726 N.W.2d at 802 (Cady, J., concurring specially). Accordingly, it is in the

best interests of the child's safety, long-term physical and mental growth, and emotional needs to terminate the father's parental rights.

### C. Permissive Factors.

The father argues the juvenile court should not have terminated his parental rights because the father developed a strong bond with K.S. and the child is under the maternal grandmother's custody. Iowa Code section 232.116 (3)(a) and (c) allows the court to decline to terminate if it "would be detrimental to the child at the time due to the closeness of the parent-child relationship," or a "relative has legal custody of the child." The statutory factors are permissive, not mandatory. *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011). "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.* We agree with the district court that the closeness of the parent-child relationship does not override the need for termination. Iowa Code § 232.116(3)(c). K.S. last lived with either parent at birth while the mother was hiding from authorities and both parents were suffering from severe substance-abuse issues. At the time of the termination proceedings, K.S. was approximately one year old and the father had not seen the child in approximately two months due to his illegal drug use. The child has lived with the maternal grandmother since removal. The father's substance-abuse issues, as outlined above, outweigh any bond that exists between K.S. and the father. K.S. has yet to experience permanency and deserves a stable environment. For similar reasons K.S.'s placement with the maternal grandmother should also not preclude termination. *See id.* § 232.116(3)(a). Our primary consideration is

placing the child in an environment that furthers the child's long-term growth and well-being. *See id.* § 232.116(2). Termination of the father's parental rights will allow for adoption and permanency for K.S. Accordingly, we affirm the termination of the father's parental rights

**AFFIRMED**